## LASSELL *vs.* REED.

An outgoing tenant *in agriculture* is not entitled to the manure made on the farm during his tenancy, even though lying in heaps in the farm yard, and though it were made by his own cattle, and from his own fodder.

This case, which was trespass *quare clausum fregit,* came before the court upon a case stated by the parties.

The defendant had been the lessee of the plaintiff's farm, for the term of one year, ending *April* 15th ; on which day he left the premises, leaving thereon a quantity of manure, lying in heaps about the barn and in the farm yard, so frozen that it could not then be removed without great inconvenience. It was afterwards taken away by the defendant, between the 10th and the 30th of *May,* as soon as it conveniently could be removed ; doing no other damage than was unavoidable in effecting that object ; and this act was the trespass complained of. Some of the cattle kept on the farm belonged to the lessor and were leased with the premises ; others belonged to the defendant. Some of the hay also, was purchased by the defendant and the residue was cut on the farm.—The lease was referred to in the statement of facts, as containing covenants for the breach of which the lessor had recovered judgment ; but none of them related to the surrender or mode of management of the farm, or in any manner touched the cause of this action.

The parties agreed that if the opinion of the court should be wholly with the defendant, he should have judgment for costs ;— that if he had a right to take away the manure at the end of his term, and not afterwards, the plaintiff should have judgment for

nominal damages and costs ;—but if he had no right to the manure, the plaintiff should have judgment for its value, being fifteen dollars, and costs.

*Johnson*, for the defendant, contended for the right of an outgoing tenant in agriculture to remove all the fruits of his good husbandry not absolutely incorporated with the soil ; and that the law bound him only to leave the premises in as good condition as he received them ; and cited *Penton v. Roberts*, 2 *East* 88 ; *Elwes v. Maw*, 3 *East* 38.

*Crosby* for the plaintiff, cited 1 *Esp. N. P.* 279 ; 3 *Bac. Abr.* 63.

The opinion of the Court was read at the ensuing *September* term in *York*, as drawn up by

MELLEN C. J.   Upon examination of the lease referred to in the statement of facts, we do not perceive any covenants on the part of *Reed* which have any direct bearing on the questions submitted for our decision.   Nothing is said as to the management of the farm in a husband-like manner, or surrendering it at the end of the year in as good order and condition as it was at the commencement of the lease.   The lease is also silent on the subject of manure.   The same kind of silence or inattention has been the occasion of the numerous decisions which are to be found in the books of reports between lessors and lessees, mortgagors and mortgagees, and grantors and grantees, or those claiming under them, in relation to the legal character and ownership of certain articles or species of property, connected with or appertaining to the main subject of the conveyance or contract.   A few words, inserted in such instruments, expressive of the meaning of the parties respecting the subject, would have prevented all controversy and doubt.   In the absence of all such language, indicating their intention as to the particulars above alluded to, courts of law have been obliged to settle the rights of contending claimants, in some cases according to common understanding and usage ; thus window blinds, keys, &c. are considered as part of the real estate, (though not strictly speaking fixtures,) or rather as so connected with the realty as always to pass with it.   In other cases,

as between landlord and tenant, the question has been settled upon the principles of general policy and utility ; as in the case of erections for the purpose of carrying on trade, or the more profitable management of a farm by the tenant. It does not appear by the facts before us, that there is any general usage, in virtue of which the manure made on a farm by the cattle of the lessee during the term of his lease is considered as belonging to him exclusively, or to the lessor, or to both of them ; and we have not been able to find any case directly applicable to the present. There being no usage, nor such decision, nor expressed intention of the parties to guide us, the case is one which must be decided on the principles of policy and the public good ; for we do not deem the case cited from *Espinasse* as applicable. The opinion there given was founded on certain expressions in the lease, by means of which the lessee was considered as a trespasser in removing the manure from the farm at the end of the lease.

What then does policy and the public good dictate and require in the present case ? Before answering the question we would observe that we do not consider the case in any way changed by the fact that a part of the fodder was carried on to the farm by the defendant, and a part of the cattle on the farm were those leased ; for the purposes of the lease, such fodder and such cattle must be considered as belonging to the tenant during the term ; and he must be considered as the purchaser of the fodder growing on the land, by the contract of lease, as much as if he should purchase it elsewhere on account of the want of a sufficiency produced by the farm ; because a farm not yielding a sufficiency would command the less rent on that account. Numerous cases shew that a tenant, at the termination of his lease, may remove erections made at his own expense for the purpose of carrying on his trade ; because it is for the public good that such species of enterprise and industry should be encouraged ; and where the parties are silent on the subject in the lease, the law decides what principle best advances the public interest and accords with good policy, and by that principle settles the question of property. It is our duty to regard and protect the interests of agriculture as well as trade. It is obviously true, as a general observation, that

manure is essential on a farm ; and that such manure is the product of the stock kept on such farm and relied upon as annually to be appropriated to enrich the farm and render it productive. If at the end of the year, or of the term where the lease is for more than a year, the tenant may lawfully remove the manure which has been accumulated, the consequence will be the impoverishment of the farm for the ensuing year ; or such a consequence must be prevented at an unexpected expense, occasioned by the conduct of the lessee ; or else the farm, destitute of manure, must necessarily be leased at a reduced rent or unprofitably occupied by the owner. Either alternative is an unreasonable one ; and all the above mentioned consequences may be avoided by denying to the lessee what is contended for in this action. His claim has no foundation in justice or reason, and such a claim the laws of the land cannot sanction. It is true that the defendant did not remove and carry away any manure, except what was lying in heaps, probably adjoining the barn in the usual places ; but still if he had a right to remove those heaps, why had he not a right to travel over the farm and collect and remove as much as he could find scattered upon the ground during the summer and autumn by the cattle in their pastures ? In both instances the manure was the product of his cattle ; yet who ever claimed to exercise such a right, or pretended to have such a claim ? The argument proves too much, and leads to impossibilities in practice, as well as to something in theory which bears a strong resemblance to an absurdity.

We do not mean to be understood by this opinion, as extending the principles on which it is founded to the case of tenants of livery stables in towns, and perhaps some other estate, having no connexion with the pursuits of agriculture ; other principles may be applicable in such circumstances ; but as to their application or their extent we mean to give no opinion on this occasion.

The case most nearly resembling the present is that of *Kittredge v. Woods,* 3 *N. Hamp. Rep.* 503, in which it was decided that when land is sold and conveyed, manure lying about a barn upon the land, will pass to the grantee, as an incident to the land, unless there be a reservation of it in the deed. The Chief Justice observ-

ed that the question would generally arise between lessor and lessee, and very plainly intimates an opinion that a lessee, after the expiration of his lease, would have no right to the manure left on the land. On the whole, we are all of opinion that the defence is not sustained, and that the defendant must be called. According to the agreement of the parties, judgment must be entered for $15,00 and costs.